Steven R. Pounian (5795)
Brian J. Alexander (9435)
Brendan S. Maher (9925)
**KREINDLER & KREINDLER LLP**
100 Park Avenue
New York, NY 10017
Tel. (212) 687-8181
Fax. (212) 972-9432
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHAN INDUSTRIES, LLC
Plaintiff,

v.

TYCO INTERNATIONAL, INC.,
Defendant

**PLAINTIFF'S OPPOSITION TO
TYCO'S MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

CV-04-1018 (HAA)

**MEMORANDUM OF LAW IN OPPOSITION TO TYCO'S MOTION TO
DISMISS**

## TABLE OF CONTENTS

SUMMARY OF AMENDED COMPLAINT .................................................................1

SUMMARY OF ARGUMENT.............................................................................................3

STANDARD OF REVIEW ..................................................................................................4

I.      The Amended Complaint Properly States A Fraud In The Inducement Claim..........5

    A.    Fraudulent Inducement Claims Are Recognized Under New Jersey Law In
          Cases Involving Contract ............................................................................................5

        1.    The Economic Loss Doctrine Does Not Apply To Fraudulent Inducement.............6

        2.    The Cases Cited By Tyco Are Distinguishable And Not Governing Authority.......8

    B.    Fraud Is Pled With Sufficient Particularity...............................................................11

    C.    Tyco's "No Reliance" Argument Lacks Authority And Sense...................................12

II.     The Complaint Properly Pleads Conspiracy To Defraud.............................................13

III.    The Amended Complaint Properly States A Claim For Breach Of The
        Covenant Of Good Faith And Fair Dealing ...............................................................14

IV.    Shan Is Entitled To Seek Indemnification, Rescission, And Punitive Damages
        In Its Complaint...........................................................................................................16

    A.    An Indemnification Claim Is Warranted ...................................................................16

    B.    Shan Is Entitled To Seek Rescission In Its Complaint...................................................17

    C.    Punitive Damages are Recoverable in Fraud and Contract Actions ..........................17

    D.    Dismissal Is Unnecessary Because Any Technical Deficiencies In Plaintiff's
          Complaint Can Be Easily Remedied By Amendment .................................................19

CONCLUSION .................................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Alloway v. General Marine Indus., 149 N.J. 620, 639-40, 695 A.2d 264, 274 (1997) ..........4, 6, 7

Association Group Life, Inc. v. Catholic War Veterans, 61 N.J. 150, 154, 293 A.2d 382, 384 (1972)........................................................................................................................15

Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT, 1997 WL 576402, *18 (D.N.J. 1997) ........................................................................................8, 10, 14

Bates v. Southgate, 308 Mass. 170, 182, 31 N.E.2d 551, 558 (1941) ............................................6

BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 576, (1996) ...........................................................18

Bogart v. National Community Banks, Inc.  1992 WL 203788, *4-5  (D.N.J. 1992)....................5

Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 609, 560 A.2d 655, 660 (1989) ..................5, 12, 17

Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F.Supp.2d 557, 563 (D.N.J. 2002) ...................................................................................................................8

CFTC v. American Metal Exchange, 693 F.Supp. 168, 190 (D.N.J. 1988) ..................................11

Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J. Super. 171, 174, 643 A.2d 649 (N.J. Super. A.D. 1994)................................................................................................4, 6, 9

Cummings v. HPG Intern., Inc., 244 F.3d 16, 21 (1st Cir. 2001) ..................................................6

Curley v. Cumberland Farms Dairy, Inc., 728 F.Supp. 1123, 1135 (D.N.J. 1989) ......................14

Domm v. Jersey Printing Co., 871 F.Supp. 732, 739 (D.N.J. 1994) ............................................18

First Valley Leasing, Inc. v. Goushy, 795 F.Supp. 693, 699  (D.N.J. 1992)..................................8

Gleason v. Northwest Mortgage, 243 F.3d 130, 144 (3rd Cir. 2001)............................................8

Grand Street Artists v. General Elec. Co., 19 F.Supp.2d 242, 252-53 (D.N.J. 1998) ..................16

Hilton Hotels Corp. v. Piper Co., 214 N.J. Super. 328, 336, 519 A.2d 368, 372-73 (N.J. Super. Ch. 1986) ....................................................................................................17

Lithuanian Commerce Corporation, Ltd. v. Sara Lee Hosiery, 219 F.Supp.2d 600, 607-608 (D.N.J. 2002) ...........................................................................................8, 11

Lo Bosco v. Kure Engineering Ltd., 891 F.Supp. 1020 (D.N.J. 1995) ............................4, 8, 9, 10

Marcangelo v. Boardwalk Regency Corp., 847 F.Supp. 1222, 1230 (D.N.J. 1994) .................... 17

McConkey v. AON Corp., 354 N.J.Super. 25, 55-56, 804 A.2d 572, 590 (N.J.Super.A.D. 2002) ............................................................................................................................................ 18

Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J.Super. 337, 364, 633 A.2d 985, 998 (N.J.Super.A.D. 1993) ................................................................................... 13, 14

Naporano Iron & Metal Co. v. American Crane Corp., 79 F.Supp.2d 494 (D.N.J. 1999) .. 8, 18, 19

New York Life Ins. Co. v. Weiss, 133 N.J. Eq. 375, 32 A.2d 341 (N.J. Err. & App. 1943) ..... 5, 17

Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 130, 207 A.2d 522, 531 (1965) .................... 15

Perth Amboy Iron Works, Inc. v. American Home Assurance Company, 226 N.J.Super 200, 543 A.2d 1020 (N.J.Super. A.D. 1988), aff'd, 118 N.J. 249, 571 A.2d 294 (1990) ...................................................................................................................................... 4, 7, 14

Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437, 449, 358 A.2d 805, 812 (N.J.Super App.Div. 1976) .......................................................................................... 18

Seville Industries Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3rdCir. 1984), cert. denied, 469 U.S. 1211 (1985) ............................................................. 5

Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985) ............... 6

Unifoil Corporation v. Cheque Printers and Encoders Limited, 622 F.Supp. 268, 271 (D.N.J. 1985) ................................................................................................................ 8, 9, 18

Werner & Pfleiderer Corp. v. Gary Chem. Corp., 697 F.Supp. 808 (D.N.J. 1988) ................. 9, 10

Werwinski v. Ford Motor Co., 286 F.3d 661 (3rd Cir. 2002) ........................................................ 10

Werwinski v. Ford Motor Co., 2000 WL 1201576 *3-4 (E.D. Pa. 2000) .................................... 11

**Statutes**

Fed. R. Civ. P. 15(a) ...................................................................................................................... 19

Fed. R. Civ. P. 8 ........................................................................................................... 5, 15, 16, 19

Fed. R. Civ. P. 8(e)(2) .................................................................................................................... 16

Fed. R. Civ. P. 8(f) ......................................................................................................................... 19

Fed. R. Civ. P. 9(b) ............................................................................................................ 5, 11, 12

N.J.S.A. 2A:15-5.12(b)(1-4) .......................................................................................................... 18

iii

N.J.S.A. 12A:2-721 ................................................................................................................17

N.J.S.A. 12A:1-103 .............................................................................................................7, 11

iv

This memorandum of law is respectfully submitted in Opposition to Tyco's Motion to Dismiss.

## SUMMARY OF AMENDED COMPLAINT

In January 2000, Defendant Tyco International ("Tyco") sold Accurate Forming ("Accurate" or "AF"), a manufacturing plant in Hamburg, New Jersey, to Shan Industries, LLC ("Shan"). Amended Complaint, ¶6.  Tyco and Shan signed an Asset Purchase Agreement ("APA") in connection with the sale.  ¶¶9, 10.

Accurate manufactures deep drawn metal parts used in a variety of end products, including writing instruments.  ¶6.  By necessity, Accurate employs hazardous chemicals in the manufacturing process.  ¶¶20, 25(c).  Those hazardous chemicals are used, among other things, to "degrease" the drawn metal and to lacquer the finished parts.  ¶¶20, 25(c), 27.  Accordingly, the machines and processes in use at Accurate are subject to strict federal and state environmental regulations. ¶¶24-27.  Environmental compliance is a pre-condition for the lawful and profitable operation of Accurate.  ¶¶24-28.

Tyco's sale of Accurate was rooted in deception.  ¶¶24, 39-42.  To fraudulently induce Shan's purchase, Tyco lied about the plant being environmentally compliant.  Id.  To inflate the purchase price of the plant, Tyco lied about how much the plant could lawfully produce.  ¶40(e).  To seal the fraudulent contract, Tyco falsely promised to indemnify Shan for losses suffered as a result of environmental noncompliance. ¶22.  To cover its tracks, Tyco prohibited Shan from conducting an environmental audit of the factory until 2003.  ¶16.

Relying on those lies and prevented from discovering them, Shan bought what it thought was an environmentally compliant Accurate.  Shan then discovered the truth. ¶¶24-27.  The plant wasn't environmentally compliant and hadn't been for years; it emitted excessive amounts of

1

vaporous hazardous substances; it couldn't lawfully produce as much as Tyco claimed it could; fixing the plant would cost millions in compliance costs and lost business; and Tyco had no intention of satisfying its indemnity obligation. ¶¶24-28, 32(c-d), 39-42.

The specific allegations of Tyco's fraud prior to entering the contract include:

- "In order to induce SHAN *to enter* into the APA, TYCO made representations that *it knew at the time* were material to SHAN's consideration of the purchase of AF and were blatantly false." ¶ 39 (emphasis supplied).

- Among these misrepresentations that Tyco knowingly and intentionally made are the following:

  - Tyco told Shan that Accurate "all environmental permits required for the lawful operation of the business and was in compliance with the applicable environmental permits and law," ¶ 40(a), but "AF was and always has been operating in violation of federal and state environmental laws and regulations," *id.*, including a years-long failure to comply with the National Emissions Standards for Hazardous Air Pollutants ("NESHAP"), ¶20.

  - Tyco maintained it "had not received any notice from authorities, nor were aware of any events which may have given rise to liability related to AF," ¶40(b), but an existing New Jersey state order imposing limits on volatile organic compound emissions had been routinely violated by Tyco. ¶¶25(c), 40(b).

  - Tyco advised that Accurate and its equipment were in compliance with all applicable laws, and that Tyco had no notice the contrary, ¶¶40(c-d), but

2

Tyco knew that there were irregularities with respect to emissions of TCE, a hazardous chemical, and a failure to comply with federal environmental law. ¶¶20, 27, 40(c-d).

o   Tyco reported that Accurate "was capable of production levels and revenue generation reflected in certain financial statements provided to SHAN *prior to the closing*, while operating within the law." ¶40(e) (emphasis supplied). But "the only way to sustain the rates of production represented on such financial statements was and is to operated [sic] in violation of state and federal law." *Id.* For example, "Plaintiffs have now learned that a key piece of operating equipment, the refill degreaser, uses a process impermissible under federal and state regulations .... Plaintiffs must now find not only new equipment but also a new process ... to handle millions of parts and ... it is unlikely to succeed in doing so." ¶27.

- The fraud was consummated prior to contract formation, directly leading to an APA that never would have existed but for the successful fraud: "SHAN relied, to its detriment, upon these representations in deciding to purchase AF from TYCO and was in fact induced to enter into the APA by such representations, which TYCO knew all along were false." ¶42.

## SUMMARY OF ARGUEMENT

On this motion, the allegations in the Amended Complaint are taken as true, and establish breach of contract and the covenant of good faith and fair dealing, legal and equitable fraud, rescission, indemnification, and punitive damages.

3

Tyco's central contention that the "economic loss" doctrine bars fraudulent inducement claims lacks merit. New Jersey allows separate fraudulent inducement claims in contract cases.[1] Indeed, the New Jersey Supreme Court has affirmed a fraud claim in a contractual context.[2] New Jersey has adopted the clear policy that a party cannot induce a contract by its fraudulent misrepresentations and then use contractual devices to escape liability.

Tyco's motion distorts New Jersey law. The New Jersey cases cited by Tyco support the fraud in the inducement claim herein. Those cases deal with performance of a contract (not inducement) and have been explicitly criticized by the New Jersey Appellate Division as inconsistent with state decisional law.[3]

Tyco's other arguments for dismissal are similarly without merit. Plaintiff's Amended Complaint satisfies the liberal standard of the federal pleading rules, putting defendant on notice of the claims asserted and the relief sought. Should this Court deem any component of the Complaint insufficient, in lieu of dismissal, Plaintiff requests leave to Amend the Complaint consistent with the Court's direction.

## STANDARD OF REVIEW

When considering a 12(b)(6) motion:

> the court must accept as true all factual allegations in the complaint and view them in a light most favorable to plaintiff. The court may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

---

[1] *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1020 (D.N.J. 1995); *Alloway v. General Marine Indus.,* 149 N.J. 620, 639-40, 695 A.2d 264, 274 (1997).

[2] *Perth Amboy Iron Works, Inc. v. American Home Assurance Company*, 226 N.J.Super. 200, 543 A.2d 1020 (N.J.Super. A.D. 1988) *aff'd* 118 N.J. 249, 571 A.2d 294 (1990).

[3] *Coastal Group, Inc. v. Dryvit Systems, Inc.,* 274 N.J. Super. 171, 174, 643 A.2d 649, 650 (N.J. Super. A.D. 1994)

*Bogart v. National Community Banks, Inc.*, 1992 WL 203788, *4-5  (D.N.J. 1992) (internal citations and quotations omitted).

The Complaint need only be clear enough such that defendant be on notice of the claims against it and the relief sought.  Fed. R. Civ. P. 8(a).  While fraud and mistake must be pleaded with particularity, that standard is to be interpreted liberally "to take account of the general simplicity and flexibility contemplated by the rules."  *Seville Industries Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3$^{rd}$Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985) (citations omitted)). With respect to a person's state of mind regarding fraud or mistake, only a general averment is required.  Fed. R. Civ. P. 9(b).

## I.       The Amended Complaint Properly States A Fraud In The Inducement Claim

The elements of a legal fraud claim are "(1) a material misrepresentation by defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely upon it; (4) reasonable reliance by the plaintiff; and (5) resulting damage to the plaintiff." *Bogart v. National Community Banks, Inc.*, 1992 WL 203788, *9-11 (D.N.J. 1992).[4]  All these elements are alleged in the Complaint.  *See supra*, pp. 2-4.

### A.       Fraudulent Inducement Claims Are Recognized Under New Jersey Law In Cases Involving Contract

Tyco's central argument is that a claim for "fraudulent inducement is barred by the economic loss doctrine."  All cases, including Tyco's own, hold the opposite.

---

[4]  Legal fraud is not "a bar to relief although the facts may establish equitable fraud." *New York Life Ins. Co. v. Weiss* 133 N.J. Eq. 375, 378, 32 A.2d 341, 342 (N.J.Err. & App. 1943). Equitable fraud is legal fraud absent scienter. *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 609, 560 A.2d 655, 660 (N.J. 1989) (internal citations and quotations omitted). Thus, if legal fraud is adequately pled, and equitable relief requested, then equitable fraud is adequately pled.

1.    **The Economic Loss Doctrine Does Not Apply To Fraudulent
        Inducement**

New Jersey law provides that the economic loss doctrine does not apply to intentional

torts like fraudulent inducement or conduct. *See, e.g., Alloway v. General Marine Indus.,* 149

N.J. 620, 639-40, 695 A.2d 264, 274 (1997) (New Jersey contract law does not prohibit claim for

"common-law fraud"); *Coastal Group, Inc. v. Dryvit Systems, Inc.,* 274 N.J. Super. 171, 174,

643 A.2d 649, 650 (N.J. Super. A.D. 1994) (same).[5]

*Spring Motors Distributors, Inc. v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660 (1985),

the *only* state court case Tyco cites, is the "economic loss" case on which defendant's argument

is based. But *Spring Motors* had nothing to do with fraud or misrepresentation; the plaintiff

asserted only negligence and strict liability claims. *Id.* at 660. The New Jersey Supreme Court

rejected those claims because it found that the U.C.C. did not need supplementation by *strict

liability* or *negligence* tort principles.[6] At no point did the Court hold that contract law could not

be supplemented by *intentional* tort principles.  Defendant concedes as much, ironically noting

that the New Jersey Supreme Court has *never* applied the economic loss doctrine to a "claim of

fraud," before boldly inviting this Court to do so. Tyco's Mem. at 7.

---

[5]  While Tyco asserts that all issues are governed by the contract, the contract provides that
"[t]his Agreement shall be ... construed ... in accordance with the laws of ... Massachusetts."
Amended Complaint, Ex. A, p. 50. Massachusetts law construes no contract to bar fraud claims.
*Cummings v. HPG Intern., Inc.,* 244 F.3d 16, 21 (1st Cir. 2001) (in Massachusetts, fraud claim
"based on [defendant's] allegedly fraudulent misrepresentations is not barred by the existence of
an express warranty."). As the Massachusetts Supreme Court explained over sixty years ago,
"contracts or clauses attempting to protect a party against the consequences of his own fraud are
against public policy and void where fraud inducing the contract is shown...." *Bates v.
Southgate,* 308 Mass. 170, 182, 31 N.E.2d 551, 558 (1941).
[6]  "What we have said about Spring Motors' strict liability claim applies substantially to is
negligence claim." *Id.* The decisional language employed by the Court referring generally to
"tort law" (and misleadingly quoted in Tyco's memorandum to suggest fraud is displaced by
contract) was confined in actuality to strict liability and negligence. *See generally, id.* at
579-581.

6

Subsequent to *Spring Motors*, the New Jersey Supreme Court affirmed an Appellate Division decision which held that while strict liability and negligence were barred by the economic loss doctrine, fraud was permissible. *Perth Amboy Iron Works, Inc. v. American Home Assurance Company*, 226 N.J.Super 200, 543 A.2d 1020 (N.J.Super. A.D. 1988), *aff'd,* 118 N.J. 249, 571 A.2d 294 (1990). In *Perth*, the defendants, a boat seller and manufacturer, made fraudulent misrepresentations about a boat's engines prior to, during and after the sale. Defendants' invocation of *Spring Motors* was successful with respect to strict liability and negligence claims, which were dismissed, but unsuccessful with respect to fraud: *Perth* held that all of the fraud claims were, whether before or after the contract, reachable on the merits. *Id.* at 1023-1030.

Importantly, one of the specific fraud claims at issue related to breach of warranty to repair. Although *Perth* determined that the warranty claim was unsupported based on the facts of the case (namely, the defendant had in fact fulfilled the warranty), the court did not rule such a claim was barred as a matter of law. *Id.* at 1028-30. Thus, even fraud claims arising *after* the sale and relating to the subject matter of a warranty are permitted by New Jersey law.

In *Alloway v. General Marine Indus.*, 149 N.J. 620, 695 A.2d 264 (1997), the New Jersey Supreme Court again confirmed that contract law does not forbid fraud claims. "In addition to the right to recover under the U.C.C., victims of fraud or unconscionable conduct possess substantial rights to recover for common-law fraud or for violations of various state and federal statutes." *Id.* at 639-40.[7]  Although the case at bar is not governed by the U.C.C., there is no reason to believe that *Perth* and *Alloway* do not apply to common-law breach of contract/warranty claims.

---

[7] *See* N.J.S.A. 12A:1-103 ("Unless displaced by particular provisions of this Act, the principles of law and equity, including ... the law relative to ... fraud [and] misrepresentation ... shall supplement [the UCC's] provisions.").

Numerous New Jersey federal district court cases have held that fraud claims are not barred by the existence of a contract. *See, e.g., Naporano Iron & Metal Co v. American Crane Corp.,* 79 F.Supp.2d 494 (D.N.J. 1999) (fraud claim allowed, negligence claim barred); *Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT,* 1997 WL 576402, *20 (D.N.J. 1997) (fraud claim permitted, citing *Perth*); *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1020 (D.N.J. 1995) (fraud permitted with breach of contract).

The Third Circuit itself has explained that "[n]o New Jersey Supreme Court case holds that a fraud claim cannot be maintained if based on the same underlying facts as a contract claim." *Gleason v. Northwest Mortgage,* 243 F.3d 130, 144 (3rd Cir. 2001).

### 2. The Cases Cited By Tyco Are Distinguishable And Not Governing Authority

*No* case cited by Tyco holds that "fraudulent inducement is barred by the economic loss doctrine." Tyco's Mem. at 6. Every one of Tyco's cases interpreting New Jersey law say the opposite. *See, e.g., Lithuanian Commerce Corporation, Ltd. v. Sara Lee Hosiery,* 219 F.Supp.2d 600, 607-608 (D.N.J. 2002) ("where [claim] more closely resembles a 'fraud in the inducement' claim, then the plaintiff is not prohibited from pursuing simultaneous tort and contract claims"); *Unifoil Corporation v. Cheque Printers and Encoders Limited,* 622 F.Supp. 268, 271 (D.N.J. 1985) (recognizing action for "fraud in the inducement"); *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1020, 1032 (D.N.J. 1995) (explaining fraud in the inducement permissible); *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F.Supp.2d 557, 563 (D.N.J. 2002) (permitted claims "involve[d] a fraud in the inducement of a contract"); *First Valley Leasing, Inc. v. Goushy,* 795 F.Supp. 693, 699 (D.N.J. 1992) ("classic case of fraud" permissible). The cases cited by Tyco are inapposite because they involve fraudulent *performance after* the formation of the contract. *See, e.g., Bracco,* 226 F.Supp.2d at 564 (plaintiff "does not dispute its

8

common-law fraud claim relates to alleged fraud in the performance of the contract"). Fraud in the inducement necessarily involves intentional misrepresentation *before and during* the formation of the contract. By contrast, fraud in the performance necessarily involves intentional non-performance *after* the formation of the contract. *Lo Bosco* explained that fraudulent inducement is a "misrepresentation of intent *at the time of contracting*, which then induces detrimental reliance on the part of the promisee," whereas fraudulent performance is a "*subsequent* failure of the promisor to do what he has promised." 891 F.Supp. at 1032 (emphasis supplied); *see also Bracco*, 226 F.Supp.2d at 563. Here Shan's detrimental reliance was to enter a deal that it would have avoided but for the fraud.

Moreover, the validity of the cases cited by Tyco as New Jersey authority is doubtful. In *Coastal Group, Inc. v. Dryvit Systems, Inc.,* 274 N.J. Super. 171, 643 A.2d 649 (N.J. Super. A.D. 1994), the New Jersey Appellate Division explicitly criticized several federal court decisions that barred fraud and misrepresentation in contract cases as "based on an overly expansive reading of *Spring Motors*" and inconsistent with "state decisional law." *Id.* at 178. Two of those federal cases, *Werner & Pfleiderer Corp. v. Gary Chem. Corp.,* 697 F.Supp. 808 (D.N.J. 1988) and *Unifoil,* 622 F.Supp. 268, were mentioned by name. *Id.* at 178. *Coastal Group* explicitly held that "an action based on facts showing fraudulent conduct" may proceed in both tort and contract. *Id.* at 178 (internal quotations omitted).

As a result of *Coastal Group*, the same federal district judge who decided *Werner* reversed himself in a later case and held that fraud claims were allowed:

> Although this Court found in *Werner & Pfleiderer Corp. v. Gary Chem. Corp.* that a fraud claim could not be maintained "in the context of a contract dispute between two commercial entities with relatively equal bargaining power," 697 F.Supp. 808, 814 (D.N.J. 1988) (citing *Spring Motors Distribs., Inc. v. Ford Motor Co.,*

(N.J. 1985)), a New Jersey Appellate Division case subsequent to this Court's decision found that the Uniform Commercial Code permits an action for fraud or misrepresentation in conjunction with an action on the contract, *see Coastal Group, Inc. v. Dryvit Sys., Inc.,* 643 A.2d 649, 653 (N.J.App.Div. 1994)…[U]pon reflection *the Court is persuaded by the reasoning of the Appellate Division in Coastal Group and finds that the New Jersey Supreme Court would permit the plaintiffs in this case to institute claims for fraud in addition to claims in contract.*

*Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT*, 1997 WL 576402, *18 (D.N.J. 1997) (emphasis added).

The abrogation of *Werner* demonstrates that Tyco's motion has no legal support. *Werner* involved a pre-contract fraudulent misrepresentation regarding the production rates of a plastic processing machine to be delivered pursuant to a contract. Id. at 814. The *Werner* court explicitly based its denial of the fraud claim on the fact that "the rates were *contained in the actual contract*. If these production rates were not met, [plaintiff] has the benefit of" contractual remedies. *Werner*, 697 F.Supp at 814 (emphasis in original). The subsequent criticism of *Werner* and its abrogation is conclusive evidence that the mere inclusion of a pre-contract misrepresentation into the contract itself is not grounds to bar a fraudulent inducement claim.

Yet Tyco now argues before this Court that fraudulent inducement cannot lie because "the only representations complained of" are "in the Agreeement." Tyco's Mem at 6. Tyco's reasoning is identical to that in *Werner*, which "no longer represents an accurate prediction of how the New Jersey Supreme Court would rule on this issue." *Lo Bosco* 891 F.Supp. at 1032-1033.

Tyco, fleeing from New Jersey authority, cites *Werwinski v. Ford Motor Co.,* 286 F.3d 661 (3rd Cir. 2002), which involved *Pennsylvania* law. Not only does *Werwinski* itself underscore the need to give "significant" weight to state appellate court decisions, 286 F.3d at

10

672, such as *Coastal Group*, but Tyco's own case rejected the application of *Werwinski* to New Jersey law. *Lithuanian Commerce*, 219 F.Supp.2d at 608. Moreover, the contract at issue in *Werwinski* contained express claims limitations. *See Werwinski v. Ford Motor Co.*, 2000 WL 1201576 *3-4 (E.D. Pa. 2000). No such provision appears in the APA. There is no suggestion that the APA by its terms bars fraud claims, or indeed any type of claim. The indemnity is not an exclusive remedy.

Tyco ignores the strong New Jersey policy supporting fraud in the inducement claims: a tortfeasor should not benefit from successful misconduct. *See* N.J.S.A. 12A:1-103 (claims for fraud, misrepresentation, or other invalidating cause are not barred under UCC).

Tyco engages in discredited reasoning by suggesting that any representations contained in the APA cannot establish fraudulent inducement. Tyco's Mem. at 6. Logically, misrepresentations that precede the contract and lead to its formation can establish fraud in the inducement. The case that held otherwise, *Werner*, has been repudiated. But even assuming arguendo that incorporation of a pre-Agreement misrepresentation into the Agreement does in fact bar a fraud claim, Tyco still cannot avoid fraud in the 12(b)(6) context. Whether the factual allegations regarding the fraudulent misrepresentations in reality map perfectly onto the contract is a question of fact, to be properly decided, at the earliest, after discovery permits a reasonable understanding, construction, and application of the contract to the actual facts.

**B.      Fraud Is Pled With Sufficient Particularity**

Fed. R. Civ. P. 9(b) requires only that "even absent allegations with respect to the exact factual context or words constituting the misrepresentation, a description of the nature and subject matter of the representation is sufficient." *CFTC v. American Metal Exchange*, 693 F.Supp. 168, 190 (D.N.J. 1988). Plaintiff's Amended Complaint clearly meets that standard,

11

describing the nature, substance and context of the representations, and indeed includes portions of the misrepresentations verbatim. *See supra*, pp. 2-4.

Nonetheless, Tyco disingenuously claims the Amended Complaint fails to particularly plead that Tyco had the requisite "scienter" to support Shan's claim for legal fraud.[8]

All factual inferences are made in favor of Shan, not Tyco. Fed. R. Civ. P. 9(b) specifically says that the "intent" of a person can be "averred generally." *Id.* All Shan must do is to aver generally facts which permit *any* inference to be drawn that Tyco had requisite scienter. The fraud allegations of the Complaint which set forth Tyco's intentional withholding of critical information regarding the environmental compliance of Accurate clearly qualify as a "general averment" required to produce an inference of scienter.

Tyco's attempt to render any inference of scienter impossible rests on the allegation that it took Shan "three years" to confirm the extent and magnitude of Tyco's lies. Tyco ignores the crucial fact that Shan was *contractually prohibited* from conducting an environmental audit of the factory until 2003. Amended Complaint, ¶16.

Of course, however long it took Shan to discover and confirm noncompliance that was actively concealed from it is irrelevant to whether *Tyco*---which (1) owned the plant for decades, (2) actively represented *it knew* the plant to be compliant, and (3) intentionally withheld documents it claimed did not exist---can be inferred to know that its representations were false.

### C.    Tyco's "No Reliance" Argument Lacks Authority And Sense

Shan properly alleged reliance in its fraud claim. Amended Complaint, ¶¶ 39-42. Tyco wrongly deems reliance impossible because Shan received an indemnity and an "excluded

---

[8] Tyco's "scienter" argument could not apply to Shan's claim for *equitable* fraud, which does not require scienter. *See Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 609, 560 A.2d 655, 660 (N.J. 1989).

liabilities" provision from Tyco.   Tyco's theory, unaccompanied by authority, is contrary to common sense.

First, indemnification and reliance are no more mutually exclusive than a skydiver's life insurance and a parachute.  Indemnification guards against the possibility that present reliance on the other party's representations may entail future undesirable consequences. The same reasoning is true regarding excluded liabilities.   What both indemnification and liability exclusion prove is that one party is relying so completely on the other that it needs protection if that present reliance later proves misplaced.  Logically, there would be no need to protect oneself if one had not originally relied on the other party.  Legally, *Coastal Group* and the repudiation of *Werner* show the existence of a contract remedy does not destroy reliance. *See supra* at 8-11.

Second, Tyco's argument does not address alleged acts and damages that may fall outside the indemnity or excluded liability provisions.  Insofar as Tyco's fraudulent misrepresentations and Shan's corresponding damages fall outside the ambit of the contract's indemnity or excluded liability provisions, neither could even theoretically undermine reliance.

II.     **The Complaint Properly Pleads Conspiracy To Defraud**

A civil conspiracy is

a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

*Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J.Super. 337, 364, 633 A.2d 985, 998 (N.J.Super.A.D. 1993) (internal quotations omitted).

The Complaint's conspiracy count names two or more persons, namely Tyco, consultants involved with Tyco, and Earth-Tech, Inc.   Amended Complaint, ¶¶ 43-47.  Tyco's suggestion that because it owns Earth Tech conspiracy cannot lie is simply wrong.  Parents and subsidiaries

13

can conspire.  *See, e.g., Curley v. Cumberland Farms Dairy, Inc.*, 728 F.Supp. 1123, 1135 (D.N.J. 1989) (in RICO context, parent-subsidiary conspiracy permissible).

The conspiracy count alleges numerous overt acts undertaken by Tyco in furtherance of the conspiracy, including acts prior to the sale, viz., the misrepresentations detailed in paragraphs ¶¶ 38-42 of the Complaint.   The alleged acts that occurred after closing may offer circumstantial evidence of Tyco's intent to deceive. *See Perth,* 226 N.J.Super at 218 n.15.

Finally, the conspiracy is alleged with sufficient particularity: Tyco and its co-conspirators intended to and did tortiously and unlawfully dupe Shan into paying a higher price for the factory based on misrepresentations relating to the factory itself and Tyco's concealed intent to thwart satisfaction of the indemnity obligation.   This meets the requirement that one could "infer from the circumstances that the alleged conspirators had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." *Morgan,* 268 N.J.Super. at 365.

Tyco's suggestion that plaintiff must provide more detail in the form of "evidence of an agreement" contravenes the case law.  A plaintiff need not prove that each participant in a conspiracy knew "the exact limits of the illegal plan or the identity of all participants," or even "provide direct evidence of the agreement between the conspirators." *Morgan,* 268 N.J.Super at 364-365.

## III.   The Amended Complaint Properly States A Claim For Breach Of The Covenant Of Good Faith And Fair Dealing

An "implied covenant of good faith and fair dealing," exists as a "component of every New Jersey contract." *Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT*, 1997 WL 576402, *20 (D.N.J. 1997) (internal quotations omitted).  The covenant provides that "neither party shall do anything which will have the effect of destroying or injuring the right of the other

14

party to receive the fruits of the contract." *Palisades Properties, Inc. v. Brunetti,* 44 N.J. 117,

130, 207 A.2d 522, 531 (1965).  The covenant can be breached even absent a contract violation

if a party to the contract engaged in some behavior "not contemplated by the spirit of the contract

and [that] fell short of fair dealing." *Association Group Life, Inc. v. Catholic War Veterans*, 61

N.J. 150, 154, 293 A.2d 382, 384 (1972).  Here Shan alleges that the entirety of Tyco's actions

were anathema to the "spirit of the contract" and "fair dealing."  Amended Complaint, ¶¶22, 28,

32-36.

        Tyco suggests that a cause of action for breach of the covenant of good faith and fair

dealing is barred unless the breach involves contractual "gap filling," but cites no law to support

its theory. Tyco's Mem. at 15.

        Tyco in effect argues that because its actions are alleged to have violated contractual

provisions, a cause of action for breach of the covenant for good faith and fair dealing must be

dismissed.  That runs counter to the direction of Fed. R. Civ. P. 8 that "[r]elief in the alternative

or of several different types may be demanded" and that a party may "state as many separate

claims … as the party has regardless of consistency and whether based on legal, equitable, or

maritime grounds." *Id.* at 8(a) and 8(e)(2).

        Plaintiff has correctly pleaded the potentially applicable legal claims.  The Complaint

alleges that the APA and the indemnity provision, and the spirit in which they were negotiated,

envisioned a compliant Accurate and fair indemnity for failure of same, and that Tyco violated

both the terms (breach of contract) and spirit (breach of covenant of good faith) of the

Agreement.  If Tyco's actions violated contractual terms, Plaintiff's breach of contract action

will prevail.  If Tyco's actions violated the spirit but not the explicit terms of the Agreement,

Plaintiff's breach of covenant of good faith and fair dealing will prevail.

15

For instance, the Complaint alleges that Tyco has "stalled, equivocated, and delayed" for three years in not honoring its indemnity obligation. Amended Complaint, ¶22. Tyco's ongoing delay tactics have forced Shan to expend critical time, labor, and resources, and endangers Shan's continued existence as a going concern. Amended Complaint, ¶28. Such tactics, to the extent not expressly addressed by the contract, plainly were not "contemplated by the spirit of the contract" and falls "short of fair dealing."

## IV. Shan Is Entitled To Seek Indemnification, Rescission, And Punitive Damages In Its Complaint

### A. An Indemnification Claim Is Warranted

If plaintiff's factual allegations that plaintiff's damages arose from losses associated with environmental noncompliance are taken as true, then as a matter of law plaintiff has a claim for indemnification arising from the APA. Tyco makes no contrary argument.

Rather, Tyco takes issue that plaintiff set forth the particulars of its indemnification claim under a separate label entitled "Count V: Indemnification," rather than including it under the breach of contract section of the Complaint. Of course, the precise location in the Complaint where plaintiff defines the particulars of its claims and sought relief is irrelevant under the liberal "notice" pleading of the Federal Rules, so long as defendant is on notice of the claim asserted and the relief sought. The Amended Complaint clearly puts defendant on notice that Plaintiff seeks both contract damages that flow from breach ("Count I"), and enforcement of the indemnification provision of the contract ("Count V"). Nothing precludes plaintiff from seeking both contract-based remedies at the pleading stage. Fed. R. Civ. P. 8(e)(2). Indeed, courts in this Circuit regularly adjudicate complaints that include "indemnification" claims. *See, e.g., Grand Street Artists v. General Elec. Co.,* 19 F.Supp.2d 242, 252-53 (D.N.J. 1998) (for reasons of duty, denying defendants' motion to dismiss indemnification claim).

16

**B.   Shan Is Entitled To Seek Rescission In Its Complaint**

As plaintiff properly alleges material breach, material misrepresentation, and fraud, rescission is a permissible remedy as a matter of law.

Rescission of a contract is permitted where there exists "original invalidity, fraud, failure of consideration or a material breach or default," *Hilton Hotels Corp. v. Piper Co.*, 214 N.J. Super. 328, 336, 519 A.2d 368, 372-73 (N.J. Super. Ch. 1986), or where there is a "material misrepresentation." *See Marcangelo v. Boardwalk Regency Corp.*, 847 F.Supp. 1222, 1230 (D.N.J. 1994).

The appropriateness of rescission as a remedy is a matter for the Court to decide after knowing the facts necessary and relevant to properly inform the Court's exercise of discretion. It is premature for the court to resolve the issue on a motion to dismiss. Contrary to Tyco's strained reading of the case law, there is no *per se* prohibition against rescission because too much time has passed (*see New York Life Ins. Co. v. Weiss*, 133 N.J. Eq. 375, 32 A.2d 341 (N.J. Err. & App. 1943) (rescission granted years after fraud occurred)); or because partial rescission is sought (*see Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 612, 560 A.2d 655, 662 (1989) ("a severable transaction may be partially rescinded"); or because a breach of contract claim is simultaneously made, *see, e.g.,* N.J.S.A. 12A:2-721 ("Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.").

**C.   Punitive Damages are Recoverable in Fraud and Contract Actions**

There are *several* independent bases for the punitive damage claims alleged in the Complaint.

First, punitive damages are available in a fraud action. *McConkey v. AON Corp.*, 354 N.J.Super. 25, 55-56, 804 A.2d 572, 590 (N.J.Super.A.D. 2002) (punitive damages available in fraudulent inducement action, noting that "infliction of economic injury, especially when done intentionally through affirmative acts of misconduct, or when the target is financially vulnerable, can warrant a substantial penalty") (quoting *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 576, (1996)).

Second, punitive damages are available in contract actions where a breach of statutory duty is established. *Sandler v. Lawn-A-Mat Chem. & Equip. Corp.,* 141 N.J. Super. 437, 449, 358 A.2d 805, 812 (N.J.Super A.D. 1976) (listing breach of statutory duty affecting the public as basis for punitive damages). Here Tyco failed in its statutory duties relating to environmental compliance.

Third, courts have recognized punitive damages in contract actions based on "aggravated circumstances." *Sandler,* 141 N.J. Super. at 449; *Unifoil,* 622 F.Supp. at 272; *Naporano,* 79 F. Supp.2d at 512-513. In New Jersey, factors that could establish "aggravated circumstances" include: the likelihood of serious harm; defendant's awareness of the likelihood, defendant's conduct upon learning harm would arise, and duration of defendant's conduct and any concealment. *See* N.J.S.A. 2A:15-5.12(b)(1-4). The likelihood of environmental harm was high given the toxic emission, and likelihood of business harm was high given Accurate's dependence on compliance; Tyco was aware of these risks, having operated the plant for decades and knowing the consequences of noncompliance; Tyco has ignored its indemnity obligation; and Tyco's conduct in both operating a noncompliant factory and refusing to assist Shan has been going on for years.

18

Punitive damages are generally a fact question for the jury. *Domm v. Jersey Printing Co.*, 871 F.Supp. 732, 739 (D.N.J. 1994) (denying motion for summary judgment on punitive damages as premature because "issue of punitive damages is a fact question which should be decided by a jury"). *See also Naporano*, 79 F. Supp.2d at 513 (declining to dismiss punitive damages in a contract count in 12(b)(6) context). Shan's punitive damages requests are appropriated pleaded and should remain.

**D.     Dismissal Is Unnecessary Because Any Technical Deficiencies In Plaintiff's Complaint Can Be Easily Remedied By Amendment**

Tyco argues that Shan's claims for indemnification, rescission, and punitive damages are not independent claims, but prayers for relief, and thus must be dismissed. Insofar as Tyco is technically correct that indemnification, rescission and punitive damages are not independent claims, but rather prayers for relief improperly styled, there is nothing to dismiss. The Complaint "shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f), and the Complaint's other causes of action clearly support indemnification, rescission and punitive damages as relief. *See supra* at 16-19. The appropriate remedy, if any, is not to strike plaintiff's requests for relief, but to grant plaintiff leave to amend the Complaint so as to appropriately relabel the requests for indemnification, rescission, and punitive damages as prayers for relief. Fed. R. Civ. P. 15(a).

19

## CONCLUSION

Tyco's Motion to Dismiss should be denied.


Dated: April 22, 2004
      New York, New York

                                       KREINDLER & KREINDLER


                                       Steven R. Pounian, Esq.
                                       Brian J. Alexander, Esq.
                                       Brendan S. Maher, Esq.
                                       100 Park Avenue
                                       New York, New York  10017
                                       (212) 687-8181
                                       Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Lisha LaPlante, hereby certify that the foregoing ***Shan's Opposition to Tyco's Motion***

***to Dismiss*** was served ***by hand*** to the following attorneys on this 22nd day of April 2004:

Glen Silverstein, Esq.
Leader & Berkon LLP
630 Third Avenue
New York, NY 10017
Attorneys for Defendant Tyco

Lisha LaPlante