NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHAN INDUSTRIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 04-1018 (HAA) |
| | ) | |
| -v- | ) | **OPINION AND ORDER** |
| | ) | |
| TYCO INTERNATIONAL (US), INC., | ) | |
| | ) | |
| Defendant. | ) | |

Gerald J. Williams, Esq.
Esther Eva Berezofsky, Esq.
Williams, Cuker & Berezofsky, Esqs.
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002-
*Attorneys for Plaintiff*

Michael S. Meisel, Esq.
Cole, Schotz, Meisel,
 Forman & Leonard, P.A.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07602
*Attorneys for Defendant*

**ACKERMAN**, Senior District Judge:

This matter comes before the Court on a motion by Defendant Tyco International (US), Inc. ("Tyco") for partial summary judgment dismissing those portions of claims of Plaintiff Shan Industries, LLC ("Shan") that seek attorneys' fees in connection with the prosecution of this action. For the following reasons, Tyco's motion is GRANTED.

*Factual Background*

This Court has recently resolved Tyco's Motion to Dismiss the Amended Complaint and Shan's Motion to Amend the Amended Complaint.  *See* Shan Indus., LLC v. Tyco Int'l (US) Inc., No. 04-1018 (D.N.J. Sept. 9, 2005) (opinion and order denying motion to dismiss and granting leave to amend) ("Sept. 9, 2005 Order").  The Sept. 9, 2005 Order contained an extensive recitation of the facts of this case, incorporated herein by reference.  For the purposes of this motion, the following additional facts are relevant.

The Asset Purchase Agreement ("APA") entered into between the two parties in this action provided for certain indemnification rights, the scope of which are in dispute in this motion. Both parties claim that Shan's indemnification rights arise from Section 11.1 of the APA, which provides, in relevant part:

> 11.1 Indemnification by Sellers.  (A) Subject to the limits set forth in this Article 11, Sellers agree to indemnify, defend and hold Purchaser . . . harmless from and against any and all loss, liability, damage or deficiency (including interest, penalties, natural resource damages, costs of preparation and investigation, and reasonable attorneys' fees) (collectively, "Losses") that Purchaser[] . . . may suffer, sustain, incur or become subject to, arising out of or due to (a) any Losses and liabilities arising out of ownership, operations, and control of the Businesses and Purchased Assets by Sellers prior to the Closing Date; (b) any inaccuracy of any representation of Sellers in this Agreement; (c) the breach of any warranty of Sellers in this Agreement; (d) the non-fulfillment or breach of any covenant, undertaking, agreement or other obligation of Sellers under this Agreement . . . .

(Aff. of Glen Silverstein, in Supp. of Mot. for Partial Summ. J. (hereinafter "Silverstein Aff."), Ex. B at 43.)  Shan also claims that Section 12.1 of the APA supports its entitlement to attorneys' fees. That section provides, in relevant part:

> 12.1 Expenses.  Except as otherwise set forth in this Agreement and except that a party not in breach of this Agreement shall be entitled to recover from a breaching party all expenses and costs incurred by the non-breaching party by reason of such

> breach (including, without limitation, all legal expenses and costs), each of the parties hereto shall pay its own expenses and costs incurred or to be incurred by it in negotiating, closing and carrying out this Agreement.

(*Id.* at 48.)

Tyco's motion is based on Shan's Amended Complaint (now superseded), which asserted generalized demands for attorneys' fees in connection with various counts of the Amended Complaint. (*See* Am. Compl. ¶¶ 33, 37, 42, 47.) The Amended Complaint also included a specific count captioned "Indemnification" which explicitly relied on the language of the APA to support a claim for attorneys' fees associated with the present action:

> 49. Pursuant to the APA TYCO promised to indemnify SHAN and hold it harmless from and against all losses it may suffer due to or arising out of the ownership, operation and control of [Accurate Forming, one of the business entities transferred by the APA]; inaccuracies of its representations in the APA, breaches of warranty in the APA and the non-fulfillment or breach of any obligation thereunder.
>
> 50. Losses to be indemnified specifically includes interest, penalties, natural resource damages, costs of preparation and investigation and attorneys fees.

(*Id.* ¶¶ 49, 50.

The Amended Complaint was superseded as a result of this Court's recent decision to permit Shan to file a Second Amended Complaint. The Second Amended Complaint continues to seek attorneys' fees explicitly, based upon the indemnity language of the APA in its breach of contract claim. *(See* 2d Am. Compl. ¶¶ 103-05, 113-15.) However, Shan has replaced its specific APA-based count for "Indemnification" in favor of a "Common Law Indemnification" count based upon an alleged "special relationship" between Tyco and Shan. *(See* Second Amended Complaint ¶¶ 137-38.) This new count does not rely on a contractual theory for its claim to attorneys' fees.

3

Despite this change in Shan's specific "indemnification" count, the Second Amended Complaint does not materially change Shan's claim to attorneys' fees based on the indemnification provisions of the APA, as this contractually-based claim to attorneys' fees survives in Shan's breach of contract claim.  (*See* 2d Am.Compl. ¶¶ 103-05, 113-15.)  Accordingly, this Court will interpret Tyco's motion in the context of the reframed allegations of Shan's recently-filed Second Amended Complaint.

*Analysis*

I.     **Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987).  An issue is "genuine" if a reasonable factfinder could possibly hold in the nonmovant's favor with regard to that issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is material if it influences the outcome under the governing law.  *Id.* at 248.

II.    **Interpretation of the Indemnification Language of the APA Is Appropriate on a Motion for Summary Judgment**

Tyco seeks summary judgment on Shan's claims for attorneys' fees to the extent such claims are premised upon what Tyco claims is an improper and overbroad reading of the indemnification clause contained in the APA.  Tyco asserts that the indemnification clause should be interpreted to entitle Shan to reimbursment of attorneys' fees incurred in defending

actions brought by third parties, and should not be read to provide for reimbursement by Tyco of Shan's attorneys' fees incurred in enforcing the indemnification provision itself. Shan counters that the indemnification clause should be construed to cover not only third-party actions, but also direct claims between the parties, including the action at hand.

Each party has submitted a statement of material uncontested facts pursuant to Local Civil Rule 56.1. The statements do little more than recite the sections of the APA in dispute, though each side has included in their statement, in the guise of an undisputed "fact," a statement purporting to establish the correct interpretation of the relevant APA language. These argumentative statements are inappropriate in Rule 56.1 statements. *See Rodichok v. Limitorque Corp.*, No. 95-3528, 1997 U.S. Dist. LEXIS 9975 (D.N.J. July 8, 1997) (scolding parties for including legal argument and conclusions in Rule 56.1 statements). Nevertheless, the Rule 56.1 Statements reveal that there are no genuine factual disputes, and show that both parties acknowledge that this motion turns upon the interpretation of the APA language.

As the parties are well aware, the APA is governed by Massachusetts law, consistent with this Court's holding in the September 9, 2005 Opinion.[1] Under Massachusetts law, interpretation of a written contract, including a contract for indemnity, is a question of law appropriately resolved upon a motion for summary judgment. *ER Holdings, Inc. v. Norton Co.*, 735 F. Supp. 1094, 1097 (D.Mass. 1990); *Allstate Ins. Co. v. Bearce*, 412 Mass. 442, 446-47, 589 N.E.2d 1235, 1238 (1992); *Freelander v. G. & K. Realty Corp.*, 357 Mass. 512, 516, 258 N.E.2d 786 (1970).

---

[1] The APA provides, in Paragraph 12.7, that it is to be "governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts applicable to contracts made in that state." (Silverstein Aff., Ex. B at 50.)

### III. Tyco's Argument: The American Rule and The Necessity for Unmistakably Clear Authority to Shift Responsibility for Attorneys' Fees Between Parties to a Contract

Tyco begins its argument with an explication of the "American Rule," which describes the prevailing view in Massachusetts and elsewhere that "attorney's fees are not ordinarily recoverable in the absence of statute, court rule, enforceable contract or stipulation providing therefor." *Bournewood Hosp., Inc. v. Mass. Comm'n Against Discrimination*, 371 Mass. 303, 308, 358 N.E.2d 235, 238 (1976); *see also Shorr v. Prof'l Photographers of Am.*, 1997 Mass. App. Div. 61, 63 (1997) (noting that Massachusetts follows the "American Rule" that parties are responsible for their own attorneys' fees); *Spunt v. Green*, 1994 Mass. App. Div. 27, 28-29 (1994) (same).

In support of its motion, Tyco relies primarily upon well-developed New York law interpreting the American Rule and its effect on general indemnity provisions that provide for attorneys' fees. (*See* Def.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. 6 (citing *U.S. Fid. & Guar. Co. v. Braspetrol Oil Servs. Co.*, 369 F.3d 34, 77 (2d Cir. 2004); *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989))). The cases cited by Tyco stand for the principle that even where indemnity provisions in agreements explicitly provide for the recovery of attorneys' fees, where such provisions are general, or make reference to indemnification for third-partyactions, they cannot support fee-shifting in direct actions to enforce the indemnification agreement, unless the parties' intent to shift such fees is "unmistakably clear" from the language of the agreement. As noted in *United States Fidelity and Guaranty Co.*,

> It is well settled in New York that, "inasmuch as a promise by one party to a contract to indemnify the other for [attorneys'] fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own [attorneys'] fees, the court should not infer a party's intention to waive the benefit of

6

>the [American Rule] unless the intention to do so is unmistakably clear from the language of the promise."

*U.S. Fid. & Guar. Co.*, 369 F.3d at 75 (quoting *Hooper*, 74 N.Y.2d at 492)).

The *Hooper* case, cited by the Second Circuit, involved the New York Court of Appeals' interpretation of indemnification language similar to that at issue in the instant case. The indemnity provision in *Hooper* stated that the defendant "shall at all times indemnify and hold [plaintiff] harmless . . . from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees" arising out of, *inter alia*, "[a]ny breach by [defendant] of any express or implied warranty hereunder and any express representation or provision hereof." *Hooper*, 74 N.Y.2d at 490.

The *Hooper* court noted that, while the parties "provided that defendant must identify plaintiff for 'reasonable counsel fees,'" their agreement "failed to define the scope of defendant's promise [ ] and thus we must interpret the language and determine whether it is limited to attorney's fees incurred by plaintiff in actions involving third parties, or also includes those incurred in prosecuting a suit against defendant for claims under the contract." *Id.* at 491.

The *Hooper* court proceeded from the principle that "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Id.* The court instructed that such a contractual promise "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances," ultimately articulating the requirement of "unmistakably clear" language to support such a promise. *Id.* at 491-92. In examining the indemnity provision at issue, the court found it did not "contain

7

language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant" but instead appeared to be "typical of those [agreements] which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim." *Id.*

The *Hooper* court found support for its analysis in the other provisions of the contract, which contemplated damages, costs and expenses (including counsel fees) arising from breach of warranty claims, performance of service activities, and installation and maintenance of the computer system that was the subject of the purchase contract. *Id.* at 492. The *Hooper* court noted: "All these subjects are susceptible to third-party claims for failures in the installation or operation of the system. None are exclusively or unequivocally referable to claims between the parties themselves." *Id.* Furthermore, the *Hooper* court pointed to provisions which required the plaintiff to notify the defendant of indemnifiable claims or litigation, and which permitted the defendant to assume the defense of the plaintiff in such claims or litigation. The *Hooper* court concluded that such provisions clearly showed an intent to apply to third-partyactions, because in the case of direct actions, a notice provision, let alone a right to assume representation of the plaintiff, would be superfluous. *Id.* As a result of its findings, the *Hooper* court determined that the indemnification provision was geared toward indemnification of attorneys' fees in third-party claims, and was not sufficiently specific to give rise to an entitlement to attorneys' fees in an action between the parties to enforce the contract. *Id.* at 494.

In addition to the above cases, Tyco also relies upon an unpublished District of Massachusetts opinion applying New York law to the interpretation of an indemnification provision authorizing the payment of attorneys' fees. *See Bertraux v. Dreyfus Trust Co.*, No. 99-

10815, 2002 WL 389300 (D. Mass. Mar. 12, 2002).  In *Bertraux*, the agreement in question contained a choice of law provision specifying New York law.  Accordingly, the *Bertraux* court relied upon the New York Court of Appeals' decision in *Hooper* in analyzing the scope of the indemnity agreement, recognizing that "while general [indemnification] language might be sufficient to shift fees if the agreement would have no meaning or purpose unless it were to apply to litigation between the contracting parties . . . a broad provision is not sufficient where it may foreseeably be applied to third-party cases and where there is no specific language that overrides the presumption that as between the parties to the contract the American Rule will govern."  *Id.* at *11.

> The *Bertraux* court held that the indemnification clause at issue
>
> permits indemnification in the case of claims brought by third parties who are strangers to the agreement.  Since it has meaning and effect in such cases, it should not be construed to apply to suits between the parties to the agreement in the absence of a clear and specific statement that the parties intended that result.

*Id.* at *12.

Tyco cites only one case which interprets an indemnification provision under Massachusetts law, *Grant v. Hexalon Real Estate, Inc.*, No. 91-5338,1998 Mass. Super. LEXIS 145 at *2-3 (Mass. Super. Ct. Apr. 22, 1998), *vacated on other grounds*, 51 Mass. App. Ct. 1111 (2001).  *Grant* involved Hexalon's and other parties' claims for indemnification against a snow removal subcontractor for attorneys' fees they incurred in defending a third-party personal injury action, as well as fees incurred in prosecuting the indemnification action against the snow-removal firm.  The *Grant* court began from the premise that, "[u]nder the 'American Rule,' attorneys' fees associated with the successful prosecution of a claim are not recoverable in civil

9

cases absent an agreement of the parties, a statute, or a rule to the contrary." *Grant*, 1988 Mass. Super. LEXIS 145 at *2-3. The *Grant* court then held that the indemnification provision in which defendant agreed to "hold [the indemnitees] harmless . . . from and against any liability, claims and demands" was not sufficiently explicit to overrule the presumption of the American Rule and allow the indemnitees to recover attorneys' fees associated with prosecuting the indemnity action. *Id.* at *5. Eventually, the Massachusetts Appeals Court reversed the trial court decision granting indemnification against the snow-removal contractor, and the separate decision on attorneys' fees was vacated without comment, as a result of the reversal of the underlying claim. *Grant*, 51 Mass. App. Ct. 1111 (2001).

## IV.    Shan's Argument for a "Plain Language" Interpretation of the APA's Indemnification Provisions

Shan opposes the motion for partial summary judgment on the attorneys' fees issue, primarily arguing that Tyco has advanced its motion based on improper reliance on inapplicable case law from jurisdictions other than Massachusetts. Shan asserts that Tyco has not adequately proven that Massachusetts courts impose a requirement of "unmistakably clear" contract language before permitting fee-shifting for direct claims between contracting parties, based on a contractual indemnification provision. Furthermore, Shan relies on a "plain language" reading of the APA's indemnification provision to assert that attorneys' fees are available in this matter. In addition to its argument that the language of Section 11.1 of the APA should be construed to include the attorneys' fees associated with the present action as indemnifiable amounts, Shan argues that the "Expenses" provision of the APA, Section 12.1, explicitly authorizes Shan's claim for reimbursement of attorneys fees in this matter. Shan argues that Section 12.1 "conclusively

provides for recovery of attorneys' fees" and quotes the following language from that section: "a party not in breach of this Agreement shall be entitled to recover from a breaching party all expenses and costs incurred by the non-breaching party by reason of such breach (including, without limitation, all legal expenses and costs) . . . ." (Pl.'s Mem. Of Law in Opp'n to Def.'s Mot. for Partial Summ. J. 2.)

## V.     Massachusetts Law Requires Explicit Authority for Fee-Shifting Between Parties to an Indemnification Agreement

Having thoroughly researched the issue, this Court has found two cases in which Massachusetts state and federal courts have considered the effect of the American Rule in the context of indemnification of attorneys' fees and required a clear expression of intent that mirrors the "unmistakably clear" test articulated by the New York Court of Appeals in *Hooper*. In *FDIC v. Fedders Air Conditioning, USA, Inc.*, 821 F. Supp. 50, 56 (D. Mass. 1993), the Massachusetts federal court, construing a contract under Illinois law, began its analysis by recognizing that Illinois, like Massachusetts, follows the American Rule. Proceeding from the principle of the American Rule, the court analyzed the language of the indemnity provision at issue,[2] noting that the court "could conceivably read [the Indemnity Agreement] as allowing compensation to Liberty for not only the attorneys fees Liberty incurs in defending a claim brought against Liberty by the lessee . . . but also any attorneys fees Liberty . . . incurs in connection with asserting a claim

---

[2]   The relevant provision of the Indemnity Agreement provided, in relevant part: Fedders hereby agrees to indemnify and hold Liberty harmless from and against any loss, cost, or expense incurred by Liberty, including reasonable attorneys' fees, resulting from any claim or cause of action under the Lease . . . .

*FDIC*, 821 F. Supp. at 56.

11

against Fedders as a separate cause of action." *FDIC*, 821 F. Supp. at 56. However, the district court found that the indemnity provision "must be interpreted in the context of a legal system in which attorneys fees incurred by the indemnitee to enforce an indemnity agreement against the indemnitor are normally not recoverable." *Id.* Accordingly, the Massachusetts district court found that:

> Given this context, I conclude that it is inappropriate to interpret the Indemnity Agreement in the present case as having manifested mutual intent by the parties that Fedders indemnify Liberty for attorneys fees beyond those incurred in defending a claim against Liberty by the lessee . . . . I read it, instead as providing for the more limited purpose of reimbursement of attorneys fees related only to defending against claims by the lessee and not attorneys fees incurred by Liberty . . . in asserting a claim against Fedders . . . . This interpretation is also consistent with holdings in other jurisdictions. *See, e.g. Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492, 548 N.E.2d 903, 905, 549 N.Y.S.2d 365, 367 (1989) ("Insasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for the ir own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.")

*FDIC*, 821 F. Supp. at 56.

While the Massachusetts district court in *FDIC* nominally applied Illinois law to the interpretation of the indemnification provision there at issue, functionally its application of Illinois law in the *FDIC* case served only to recognize that Illinois courts abide by the American Rule in the same way that Massachusetts courts do. Thus, for this Court's purposes, the *FDIC* opinion underscores the fact that the law governing indemnification provisions with respect to the interpretation of entitlement to attorneys' fees is the same in Illinois and Massachusetts. Accordingly, the *FDIC* opinion provides valuable guidance to this Court in interpreting the indemnification provision at issue under Massachusetts law.

Perhaps even more instructive to this Court is the decision in *Petit v. BASF Corp.*, Civ. A. 96-1814, 2001 Mass. Super. LEXIS 124 (Mass. Dist. Apr. 20, 2001), in which a Massachusetts state trial court considered the question of whether indemnity language similar to that in the instant case permitted the recovery of attorneys' fees associated with the indemnitee's action against the indemnitor. *Petit*, 2001 Mass. Super. LEXIS 124 at *9. The *Petit* court analyzed an indemnification agreement pursuant to which Marshall, a general contractor, agreed to hold BASF, the owner of a construction site, harmless from and against:

> (1) any and all liability imposed by reason of [Marshall's] actual or asserted violation (due to the performance or non-performance by [Marshall] of its duties hereunder) of laws, regulations, ordinances or other rules of any government or quasi-government body or agency.
>
> (2) any and all liability, damage, loss, cost, expense (including attorneys fees), claim, demand, suit, action, judgment or recovery for or on account of any damage or releases to the environment, bodily injury or death of persons or damage to property . . . or in connection with any negligent acts or omissions of [Marshall] arising out of the performance or non-performance by [Marshall] of its duties hereunder . . . .

*Petit*, 2001 Mass. Super. LEXIS 124 at *3-4.

Petit, a subcontractor injured on the property, sued BASF, who then filed cross-claims against Marshall and others. After settling the claims with Petit, BASF sought summary judgment against Marshall for costs, expenses and fees under the indemnity agreement, including attorneys' fees incurred by BASF in litigating against Marshall.

In analyzing whether the indemnification agreement at issue covered such attorneys' fees, the *Petit* court found guidance in *Grant v. Hexalon Real Estate, Inc.*, No. 91-5338, 1997 Mass. Super. LEXIS 366 at *6-7 (Sept. 17, 1997), *vacated on other grounds*, 51 Mass. App. Ct. 1111

(2001).³ The *Petit* court noted that *Grant* recognized "a presumption against allowing recovery under a valid indemnification clause where a party seeks indemnification for costs and attorneys fees incurred in both the original litigation and litigation with the indemnitor." *Petit*, 2001 Mass. Super. LEXIS 124 at *9-10. Based on this presumption, the *Petit* court declared that it was "persuaded by the principle that, in cases where the contestants have engaged in litigation with each other, an obligation upon one to indemnify the other for fees and costs should result only where the indemnity provision specifically expresses the intent of the parties to provide for costs thus incurred." *Id.* at *10. The court concluded that "unless the language of the indemnity provision recites clearly that Marshall must pay legal fees and expenses incurred by BASF in BASF's action against Marshall, this Court will recognize the proposition that Marshall is only responsible to indemnify BASF for the attorney fees and expenses BASF incurred in defending the [third party] claims." *Id.* The *Petit* court found that the indemnity provision "d[id] not specifically state that Marshall must pay attorney fees and expenses incurred by BASF in its action against Marshall," and therefore denied that portion of BASF's summary judgment motion. *Id.*

       This Court finds, on the basis of the foregoing cases, that Massachusetts courts, applying the fundamental principle of the American Rule, subscribe to the presumption that an indemnification agreement providing for attorneys' fees will not be interpreted to require the

---

³ The *Grant* decision cited here is related to that of the same name which was cited by Tyco in its brief. Both of these trial court opinions, which dealt with attorneys' fees in connection with indemnity actions, were vacated when the related opinion finding a right to indemnification was reversed on appeal. *See Grant*, 51 Mass. App. Ct. 1111 (2001). Thus, while the opinions have been vacated, the rationale on which the decisions were based remains valid.

reimbursement of attorneys' fees incurred by the indemnitee in an action against the indemnitor to enforce the indemnity agreement unless the language of the agreement is explicitly clear that it is intended to provide for attorneys' fees in such a case.  This position is consistent with the well-developed law of the Second Circuit and the State of New York, which jurisdictions have had more frequent occasions to consider this particular issue.  *See U.S. Fid. & Guar. Co.*, 369 F.3d at 75; *Hooper*, 74 N.Y.2d at 492 (citing cases).

In the instant case, while Section 11.1 of the APA speaks specifically to the reimbursement of losses "including attorneys' fees," it does not specify that those cited attorneys' fees are intended to comprise attorneys' fees incurred in an action to enforce the indemnification agreement itself.  Moreover, as in *Hooper*, other sections of the indemnity agreement demonstrate that the indemnity agreement was intended to cover third-party claims, rather than direct claims.  Notably, Section 11.4 of the APA speaks to obligations to provide notice of claims and an option to assume the defense of such claims.  As the *Hooper* court noted, such language indicates that the indemnification provision was drafted with an eye toward third-party claims, for in the situation of a direct claim between the parties, the notice provision and the assumption of defense option would be rendered "meaningless."  *See Hooper*, 74 N.Y.2d at 492.  Thus, because Section 11.1 of the APA captioned "Indemnification by Seller" lacks the specificity to overcome the presumption of the American Rule, this Court will not interpret it expansively to permit recovery of Shan's attorneys' fees incurred in prosecuting the instant action.

Finally, we must address Shan's assertion that Section 12.1 of the APA ("Expenses"), provides a basis for recovery of attorneys' fees incurred in this action.  This section specifies that each of the parties must bear their own expenses for negotiating, closing and carrying out the

15

APA, yet functions as an indemnification provision in that it provides for recovery of "legal expenses and costs" "incurred by reason of [a] breach" of the APA. (See Silverstein Aff., Ex. B § 12.1.)[4] Because Section 12.1 functions as an indemnification provision, the same presumption recognized by the *Petit*, *FDIC* and *Grant* courts which limits the interpretation of Section 11.1 to allow recovery of attorneys' fees only in third-party actions applies equally to Section 12.1. Accordingly, Section 12.1 is properly limited to allow reimbursement of legal expenses incurred as a result of a breach of the APA (for example, legal expenses in connection with remedying undisclosed environmental deficiencies or legal expenses incurred in defending against governmental actions premised upon undisclosed environmental violations), but will not be read to allow reimbursement of attorneys' fees incurred in enforcing the indemnification obligation itself.

## *Conclusion*

For the aforementioned reasons it is hereby ORDERED on this 29th day of November 2005 that Tyco's Motion for Partial Summary Judgment is GRANTED.


Newark, New Jersey
Date: November 30, 2005                                                                 s/ Harold A. Ackerman, U.S.D.J.

---

[4] While there may be some debate about whether the term "legal expenses" is intended to encompass attorneys' fees, this Court need not explore that issue at this time.